# UNITED STATES DISTRICT COURT
for the  
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Two cellular phones in the possession of Milwaukee Police Department (MPD); Property Inventory Number 24000881, items 1 & 2; See Attachments | Case No. 24-814M(NJ)<br>**Matter No.: 2024R00068** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the     Eastern     District of     Wisconsin
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 3/21/2024     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Honorable Nancy Joseph    .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____.



Date and time issued: 3/7/2024 @ 4:14 p.m.     
*Judge's signature*

City and state:     Milwaukee, Wisconsin          Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| Return |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name(s) of any person(s) seized: |||

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### *Items to be searched*

The property to be searched is described as follows: Two (2) cellular phones currently in the possession of the Milwaukee Police Department (MPD), which are secured in property / evidence storage at the MPD Property Section, located at 2620 West Wisconsin Avenue, Milwaukee, Wisconsin:

- MPD Property Inventory Number 24000881, item 1- described as a black in color, Sonim, model XP3800 (MEID 35610610003968), flip phone.

- MPD Property Inventory Number 24000881, item 2- described as a black in color, Sonim, model XP3800 (MEID 35248510017752), flip phone.

This warrant authorizes the forensic examination of the subject phones for the purpose of extracting the electronically stored information described in Attachment B.

12

Case 2:24-mj-00814-NJ    Filed 03/07/24    Page 3 of 18    Document 1

# ATTACHMENT B

### *Property to be seized*

1. The property to be seized on the subject phones described in Attachment A that relate to violations of Title 18 U.S.C. 922(g)(1) - possession of a firearm by a prohibited person, Title 21 U.S.C. 841(a)(1) - distribution of a controlled substance, Title 18 U.S.C. 924(c) - use of a firearm during the commission of drug trafficking, involving Sentriailia ALLEN and Torrion SPIVEY and others, but not limited to:

2. Communications from cellphone to include video footage as well as cellular call records and transmissions/ communications contained within mobile apps.

3. All records on the aforementioned electronic devices that relate to violations above, including, but not limited to:

   a. Lists of contacts, photos, IP addresses, videos and any identifying information;
   b. Photographs, videos, or other media storage connected to drugs and firearms;
   c. Types, amounts, and prices of drugs and firearms purchased/sold;
   d. Any information related to sources or purchasers of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);
   e. All bank records, checks, credit card bills, account information, and other financial records related to drug and firearms commerce.
   f. Any and all financial records connected to the purchase/ sale of firearms or other criminal activity;
   g. Any information recording SPIVEY or ALLEN's movements or travel;
   h. Any information or media related to SPIVEY or ALLEN purchase, receipt , transfer or possession of firearms;
   i. Text messages, social media messages and content, and multi-media messages, relating to the sale, purchase, trade or storage of narcotics and or firearms;

4. Evidence of user attribution showing who used or owned the subject devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

   a. Records of Internet Protocol addresses used;
   b. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user typed web addresses.

5. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

13

Case 2:24-mj-00814-NJ    Filed 03/07/24    Page 4 of 18    Document 1

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Two cellular phones in the possession of Milwaukee Police Department (MPD); Property Inventory Number 24000881, items 1 & 2; See Attachments

Case No. 24-814M(NJ)
**Matter No.: 2024R00068**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1); 21 U.S.C. § 841(a)(1); and 18 U.S.C. § 924(c); | Possession of a firearm by a prohibited person, distribution of a controlled substance and use of a firearm during the commission of drug trafficking. |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Undre Ludington, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 3/7/2024

*Judge's signature*

City and state: Milwaukee, Wisconsin

Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# APPLICATION FOR SEARCH AND SEIZURE WARRANT
## Matter No.: 2024R00068

I, Special Agent Undre Ludington, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of applications under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property / extraction of electronic digital data contained within the electronic cellular devices (more fully described in Attachments A and B), which are currently in the custody of the Milwaukee Police Department.

2. I am a Special Agent with the Bureau of Alcohol Tobacco Firearms and Explosives (ATF) and have been employed in this capacity since August 1999. As an ATF Special Agent, I have participated in numerous investigations regarding the unlawful possession of firearms by convicted felons, drug traffickers and violent trigger pullers. I have also conducted investigations related to the unlawful use of firearms, firearms/ narcotics trafficking and identifying those that conspire or aid and albeit those who commit these crimes.

3. In addition, I am an ATF Digital Media Collection Specialist (DMCS) and have been trained and tasked with assisting investigators and agents with the forensic recovery of electronic digital data from electronic devices such as computers, cellular phones, digital video recorders and storage devices such as flash memory and thumb drives for use in criminal investigations.

4. This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.

5. I have participated in numerous firearms trafficking and drug trafficking investigations involving the seizure of computers, cellular phones, cameras, and other digital

1

storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence, including information about historical and prospective wireless communications, to find proof relating to the commission of criminal offenses, including the manner, means, and identity of co-conspirators.

6. Based on my training and experience, I have become familiar with the language utilized over the telephone to discuss firearms and drug trafficking and know that the language is often limited, guarded, and coded. I also know that firearms and drug traffickers often use electronic devices (such as computers and cellular phones) and social media to facilitate these crimes, including to communicate and navigate.

7. Individuals engaged in drug and firearm traffickers typically have social media profiles and are able to access it via their computer or cellular telephone. Drug and firearm traffickers commonly maintain social media profile(s), and sometimes allow other criminal associates and/or drug and firearm trafficking associates to use their profile, to conduct criminal gang activity and/or drug and firearm trafficking business.

8. Your affiant also knows through training and experience that subjects will often take photos and videos of themselves and other associates, with their cellphones to boast of their criminal activity and to show fruits of their actions such as images of controlled substances, U.S. Currency, or brandishing/ discharging firearms.

2

Case 2:24-mj-00814-NJ    Filed 03/07/24    Page 7 of 18    Document 1

9. Because this affidavit is submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation. I have set forth only facts that I believe are sufficient to establish probable cause.

10. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the following two (2) cellular phones: )1 MPD Property Inventory Number 24000881, item 1- described as a black in color, Sonim, model XP3800 (MEID 35610610003968), flip phone and 2) MPD Property Inventory Number 24000881, item 2- described as a black in color, Sonim, model XP3800 (MEID 35248510017752), flip phone.

**PROBABLE CAUSE**

11. On January 8, 2024, MPD Officers Darryl Goss and Jordan Hemmings observed a white in color, Nissan Rogue, displaying Wisconsin License Plates AUW-7613, fail to stop at multiple controlled intersections in the area of West Glendale Avenue and North Sherman Boulevard. The officers activated their MPD marked squad's emergency lights and siren to initiate a traffic stop. The driver of the vehicle disregarded the squad car's emergency lights and siren and accelerated in an attempt to flee from the MPD squad car.

12. The driver of the Nissan Rogue led MPD on a high-speed vehicle chase that ended when the Nissan Rogue struck a curb at 4474 North 38th Street, Milwaukee, Wisconsin, which disabled the vehicle.

13. The driver, Sentriailia S. Allen (DOB: XX/XX/1992), remained with the vehicle and was taken into custody. The passenger, Torrion R. Spivey (DOB: XX/XX/1991), exited the vehicle and fled on foot. MPD officers pursued Spivey on foot and subsequently apprehended Spivey in the backyard of 4441 North 37th Street, Milwaukee, Wisconsin.

3

14. MPD Officers David Michaels and Zachary Cvetan searched the Nissan Rogue and located a dark orange in color, small duffle bag on the floorboard behind the driver's seat. From inside the main pouch of the duffle bag, the officers located a clear plastic sandwich bag that contained twenty-one (21) individually packaged corner cuts of suspected cocaine. In addition, MPD recovered from inside the duffle bag's side pocket, a clear plastic sandwich bag, which contained another clear plastic bag that contained a pink powder, suspected of being methamphetamine. Also, from inside the same side pocket, officers located another clear plastic sandwich bag that contained a pink powder, also suspected of being methamphetamine. From inside another zipped pocket of the duffle bag, officers recovered a clear plastic bag that contained a gray powder, suspected of being heroin. The duffle bag also contained a wallet with three credit cards that listed the name "Torrion Spivey."

15. From in between the front driver seat and door frame of the vehicle, officers recovered a clear plastic bag that contained two (2) additional plastic bags of suspected cocaine. An officer recovered, from the center console of the vehicle, a clear plastic bag that contained suspected marijuana.

16. MPD officers recovered from the center console a credit card with the name "Torrion Spivey" printed on it. Also from the center console, officers recovered a black digital "Mini Crimson" scale that had a white residue on the scale plate that field-tested positive for cocaine. Also from the center console, officers recovered a piece of paper with the following notes related to suspected drug written on it: "$MN $ 10/2.5 $15/2.5 $20/3.5 $25 1/2gs."

17. MPD officers recovered two (2) cell phones from inside the vehicle. One of the phones is black, "Sonim," flip phone located in the center console area near the cupholder. The

second cell phone is a black, "Sonim" flip phone that was recovered from under the driver seat. These two cell phones were placed in MPD Property Inventory#**24000881**, items **1-2.**

18. MPD also recovered a loaded, black in color, Taurus, model TH9, 9mm cal., semi-automatic pistol, bearing serial number ABJ858157. The Taurus pistol was located on the front passenger floorboard.

19. The suspected heroin field-tested (Nark II 11 and Nark II 33) positive for heroin and fentanyl with a total approximate weight of 11.75 grams.

20. The suspected methamphetamine field-tested (Nark II 01, Nark II 15, and Nark II 33) positive for methamphetamine and fentanyl with a total approximate weight of 96.95 grams.

21. The suspected cocaine field-tested (Nark II 07) positive for cocaine with a total approximate weight of 128.16 grams.

22. The suspected marijuana field-tested (Nark II 05) positive for THC with a total approximate weight of 30.3 grams.

23. Spivey has the following prior felony convictions that remain of record and unreversed: Milwaukee County case 2016CF001691 - Possession w/Intent to Deliver THC; Milwaukee County case 2018CF000678 - Fleeing or Eluding an Officer. Spivey has an open / pending felony case in Milwaukee County, case 2023CF1873 for Vehicle Operator Fleeing/ Eluding Officer.

24. Based on training and experience, and the facts summarized above, I respectfully submit that there is probable cause to search the subject phones for evidence of the following violations of federal law committed by SPIVEY and ALLEN or any other co-conspirators: Title 18 U.S.C. § 922(g)(1) - possession of a firearm by a prohibited person; Title 21 U.S.C. § 841(a)(1)

- distribution of a controlled substance, and Title 18 U.S.C. § 924(c) - use of a firearm during the commission of drug trafficking.

## TECHNICAL TERMS

25. Based on my training and experience, I use the following technical terms to convey the following meanings:

26. Wireless telephone: A wireless telephone (or mobile telephone, or cellphone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

27. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives.

Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

28. Portable Media Player: A portable media player (Or MP3 Player or Apple iPod) is a handheld digital storage device designed primarily to store and play audio, video or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data.

29. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

30. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

31. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System

(generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

32. PDA: A personal digital assistant or PDA is a handheld electronic device used for storing data (Such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as a wireless communication device and are used to access the internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a touch screen for entering data. Removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as a personal computer. For example, PDA users can work with word processing documents, spreadsheets and presentations. PDAs may also include global positioning system (GPS) technology for determining the location of the device.

33. Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

34. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

35. There is probable cause to believe that things that were once stored on the devices may still be stored there, for at least the following reasons:

36. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

37. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

38. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users

9

typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

39. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

40. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

41. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

42. Manner of execution. Because this warrant seeks only permission to examine devices already in law enforcement's custody, the execution of this warrant does not involve the physical intrusion into a premises. Consequently, I submit there is reasonable cause for the court to authorize the execution of the warrant at any time in the day or night.

## **CONCLUSION**

43. Based on the information above, I respectfully submit that there is probable cause for a search warrant authorizing the examination and extraction of electronic digital data from the subject phones described in Attachment A to seek the items described in attachment B.

## ATTACHMENT A

### *Items to be searched*

The property to be searched is described as follows: Two (2) cellular phones currently in the possession of the Milwaukee Police Department (MPD), which are secured in property / evidence storage at the MPD Property Section, located at 2620 West Wisconsin Avenue, Milwaukee, Wisconsin:

- MPD Property Inventory Number 24000881, item 1- described as a black in color, Sonim, model XP3800 (MEID 35610610003968), flip phone.

- MPD Property Inventory Number 24000881, item 2- described as a black in color, Sonim, model XP3800 (MEID 35248510017752), flip phone.

This warrant authorizes the forensic examination of the subject phones for the purpose of extracting the electronically stored information described in Attachment B.

## ATTACHMENT B

### *Property to be seized*

1. The property to be seized on the subject phones described in Attachment A that relate to violations of Title 18 U.S.C. § 922(g)(1) - possession of a firearm by a prohibited person, Title 21 U.S.C. § 841(a)(1) - distribution of a controlled substance, Title 18 U.S.C. § 924(c) - use of a firearm during the commission of drug trafficking, involving Sentriailia ALLEN and Torrion SPIVEY and others, but not limited to:

2. Communications from cellphone to include video footage as well as cellular call records and transmissions/ communications contained within mobile apps.

3. All records on the aforementioned electronic devices that relate to violations above, including, but not limited to:

   a. Lists of contacts, photos, IP addresses, videos and any identifying information;
   b. Photographs, videos, or other media storage connected to drugs and firearms;
   c. Types, amounts, and prices of drugs and firearms purchased/sold;
   d. Any information related to sources or purchasers of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);
   e. All bank records, checks, credit card bills, account information, and other financial records related to drug and firearms commerce.
   f. Any and all financial records connected to the purchase/ sale of firearms or other criminal activity;
   g. Any information recording SPIVEY or ALLEN's movements or travel;
   h. Any information or media related to SPIVEY or ALLEN purchase, receipt, transfer or possession of firearms;
   i. Text messages, social media messages and content, and multi-media messages, relating to the sale, purchase, trade or storage of narcotics and or firearms;

4. Evidence of user attribution showing who used or owned the subject devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

   a. Records of Internet Protocol addresses used;
   b. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user typed web addresses.

5. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

13